Filed 7/30/24  P. v. Stoker CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D081342 |
| Plaintiff and Respondent, | |
| v. | |
| RAYMOND LEE STOKER, JR., | Super. Ct. No. SCD283673) |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey F. Fraser, Judge.  Affirmed.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Evan Stele, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Raymond Lee Stoker, Jr. stabbed and killed Kevin Hughes. After trial, a jury convicted Stoker of first degree murder (Pen. Code, § 187, subd. (a))[1] and found true the special allegation that he personally used a deadly weapon, a knife, to commit the offense (§ 12022, subd. (b)(1)). On appeal, Stoker contends (1) there was insufficient evidence to support the first degree murder conviction, and (2) by failing to object to the prosecutor's misstatements in closing argument, his trial counsel provide inadequate assistance. Finding no merit in these contentions, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of May 27, 2019, Kevin Hughes was stabbed once in the neck as he sat at a bus stop in downtown San Diego. He stumbled away from the bus stop and collapsed on the street nearby. First responders took Hughes to the emergency room, where he died of his injury. There were no eyewitnesses to the attack.

Dana Jones, an employee of the San Diego District Attorney's Office, testified that by splicing and editing video information from cameras in various locations in downtown San Diego,[2] she created a sequential video, together with a map to show the different locations of the cameras that provided the video used in her compilation. That video was show to the jury as exhibit 14.

Exhibit 14 shows Stoker in the area of the bus stop both before and after the attack. Before the attack, Stoker can be seen walking at a leisurely pace,

---

[1]    Statutory references are to the Penal Code unless otherwise indicated.

[2]    Some of the videos were from cameras mounted on streetlights (known as intelligent cameras) and some were from businesses and residences in the area. Jones received the various videos from the San Diego Police Department and District Attorney investigators.

clad in red pants and a red hoodie, with a black bag slung over his shoulder. Hughes can be seen leaving a market and passing by a bank on his way to the bus stop bench. The video becomes grainy at this point, because the camera distance required Jones to zoom in on the image, but Stoker can be seen across the street from the bus stop. Stoker then places his bag down behind a utility box on the sidewalk, and after waiting for traffic to clear, he crosses the street in the middle of the block and walks directly to the bus stop bench, where he sits down next to Hughes. Within seconds of sitting down, Stoker stands up and swings at Hughes. Stoker then leaps back and immediately runs back across the street, retrieves his bag, and walks quickly away in the opposite direction from the bus stop. Exhibit 14 follows his progress away from the scene. Meanwhile, Hughes can be seen as he staggers from the bus stop and collapses on the street nearby.

UCSD Medical Center surgeon Leslie Kobayashi testified that she was on duty in the emergency room where Hughes was brought for his injuries. Dr. Kobayashi testified that the stab wound in Hughes's neck had irreparably injured his carotid artery and his vertebral artery, a second artery in the back of Hughes's neck, depriving his brain of blood. The trauma team's efforts to resuscitate Hughes were unsuccessful and he died.

Steven Campman, San Diego County's chief medical examiner, testified that he conducted Hughes's autopsy. Dr. Campman determined that the cause of Hughes's death was a single stab wound to the neck and the manner of death was homicide. He testified that part of the wound was almost horizontal, and it was seven-eighth of an inch long. The stabbing caused injury to Hughes's "carotid artery, jugular vein, and some other smaller arteries" in Hughes's neck. The wound was a stab wound, not a slashing wound.

The jury found Stoker guilty of first degree murder of Hughes and found true the special allegation he personally used a knife in the commission of the offense.

The trial court sentenced Stoker to state prison for one year for the knife enhancement (§ 12022, subd. (b)(1)) plus the statutory term of 25 years to life for first degree murder (§ 187).

DISCUSSION

A.    *Sufficiency of the Evidence for First Degree Murder*

When we review a challenge to the sufficiency of the evidence, we examine the entire record in the light most favorable to the judgment to determine if there is substantial evidence from which any reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) Because it is the exclusive province of the jury to determine credibility and to resolve evidentiary conflicts or inconsistencies, we presume the existence of every fact the jury could reasonably deduce from the evidence to support the judgment. (*Ibid.*; *People v. Young* (2005) 34 Cal.4th 1149, 1175, 1181.) If the circumstances reasonably justify the jury's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. (*Nelson*, *supra*, at p. 210.) We apply the same standard in determining the sufficiency of the evidence to establish premeditation and deliberation as elements of first degree murder. (*People v. Silva* (2001) 25 Cal.4th 345, 368.)

Murder is the "unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) A willful, deliberate and premeditated killing is first degree murder. (§ 189.) " ' "A verdict of deliberate and premeditated first degree murder requires more than a showing of intent to kill. [Citation.] 'Deliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance. [Citations.]"

4

" 'Premeditation and deliberation can occur in a brief interval.  "The test is not time, but reflection.  'Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly.' " ' " (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1069 (*Mendoza*).)

The Supreme Court has identified "three types of evidence—evidence of planning activity, preexisting motive, and manner of killing—that assist in reviewing the sufficiency of the evidence supporting findings of premeditation and deliberation." (*Mendoza*, *supra*, 52 Cal.4th at p. 1069, citing *People v. Solomon* (2010) 49 Cal.4th 792, 812; *People v. Anderson* (1968) 70 Cal.2d 15, 26–27.)  This is not an exhaustive list and does not " ' "exclude all other types and combinations of evidence that could support a finding of premeditation and deliberation." ' " (*Mendoza*, *supra*, at p. 1069, quoting *Solomon*, *supra*, at p. 812.)

As discussed below, although there was no evidence of any motive for Stoker's killing of Hughes, the evidence of Stoker's planning and his manner of killing Hughes support the jury's finding of premeditation and deliberation.

Here, exhibit 14 shows that Stoker placed his bag behind a utility box, crossed the street mid-block, and walked directly to the bus stop and sat down next to Hughes.  In seconds, he was back on his feet, swinging his arm as he inflicted the deadly blow to Hughes's neck.  He then ran directly back across the street to retrieve his bag and leave the scene.  From the evidence, the jury could conclude that Stoker formed the plan to kill Hughes when he set down his bag.  Stoker's conduct in walking directly over to Hughes and almost immediately stabbing him, without any sort of provocation or hesitation, confirmed Stoker had resolved to kill Hughes before he struck the single fatal blow.  (See *Mendoza*, *supra*, 52 Cal.4th at p. 1071 [none of the evidence

5

suggested that defendant's actions in positioning himself and shooting officer were rash or panicked].)

Appellant argues that the fact Stoker left his bag across the street suggested that he had not planned to kill Hughes, because "he had to run back to the backpack before making an escape." But if he had planned to sit at the bus stop to wait for a bus, he would not have left his bag behind. In fact, it is more readily inferred that when Stoker left the bag and then crossed the street, he planned to kill Hughes. The jury could have reasonably inferred that Stoker must have determined that he needed his arms to be unimpeded when he stabbed Hughes. Stoker's plan to kill Hughes was made clear with his direct approach to the bus stop and the immediacy with which he stabbed Hughes once he was next to him. There was no other reason for Stoker to sit at the bus stop bench.

Stoker's uninterrupted pointed actions in setting down his bag, crossing the street, walking directly to the bus stop, sitting beside Hughes, and then almost immediately stabbing Hughes in the throat, indicate deliberation, not impulsiveness. (*Mendoza*, *supra*, 52 Cal.4th at p. 1071 [manner of killing was not rushed or panicked but reflected stealth and precision]; *People v. Halvorsen* (2007) 42 Cal.4th 379, 422 [shooting of victims in head or neck from within feet is "a method of killing sufficiently ' "particular and exacting" ' to permit an inference that defendant was 'acting according to a preconceived design' "]; *People v. Koontz* (2002) 27 Cal.4th 1041, 1081–1082 [shooting a vital area of the body at close range indicates preconceived design to kill].) We conclude there is sufficient evidence to support the jury's verdict of first degree murder.

B.    *Closing Argument*

In closing argument, the prosecutor stated, "Any person when crossing the street, it's a green light. You have the walk sign. You look left. You look right. There's [*sic*] no cars here that can kill me. I made the decision. I

contemplated life and death, and I've made a decision." The prosecutor then explained that, "It can happen in an instant. It's not time sensitive. It's choice sensitive." Stoker argues that this comment "lowered the requirements for [premeditation] and removed the distinction between first and second degree murder," because the mental processes of premeditation and deliberation cannot happen instantaneously.

While it is true that first degree murder requires " ' "careful weighing of considerations in forming a course of action" ' " and a plan " ' "thought over in advance" ' " (*Mendoza, supra*, 52 Cal.4th at p. 1069), it is likewise the case that " ' "cold, calculated judgment may be arrived at quickly." ' " (*Ibid.*)

In *People v. Avila* (2009) 46 Cal.4th 680, the Supreme Court considered a challenge to the prosecution's argument that the decision to proceed through an intersection after a yellow light is an example of the decision-making for premeditation and deliberation. The court concluded that the argument was not misconduct: "Rather, the prosecutor used the example of assessing one's distance from a traffic light, and the location of surrounding vehicles, when it appears the light will soon turn yellow and then red, and then determining based on this information whether to proceed through the intersection when the light does turn yellow, as an example of a 'quick judgment' that is nonetheless 'cold' and 'calculated.' " (*Id.* at p. 715.) So too here: the prosecution described the decision to proceed to cross the street as such an example.

Stoker's jury was instructed in accordance with CALCRIM 521:

> "The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before completing the act that caused death. [¶] The length of time the person spends considering whether to kill does

7

not alone determine whether the killing is deliberate and premeditated.  The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances.  [¶]  A decision to kill made rashly, impulsively, or without careful consideration is not deliberate or premeditated.  On the other hand, a cold, calculated decision to kill can be reached quickly.  The test is the extent of the reflection, not the length of time."

The jury was further instructed that the arguments of counsel are not evidence.

Thus, considered in context with the jury instructions and the prosecutor's accurate statement that, "It's not time sensitive.  It's choice sensitive," we conclude that the prosecution's statement that premeditation and deliberation "can happen in an instant" was not inaccurate and did not constitute misconduct.  Accordingly, we do not address Stoker's argument regarding ineffective assistance of counsel.

## DISPOSITION

The judgment is affirmed.


KELETY, J.


WE CONCUR:


IRION, Acting P. J.


DATO, J.


8